# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SU-BE, LLC | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N23A-05-005 CEB |
| | ) | |
| NEW CASTLE COUNTY DEPARTMENT | ) | |
| OF LAND USE, NEW CASTLE COUNTY | ) | |
| BOARD OF ASSESSMENT REVIEW, | ) | |
| And NEW CASTLE COUNTY OFFICE | ) | |
| OF FINANCE, | ) | |
| | ) | |
| Appellees. | ) | |

Submitted: March 20, 2024
Decided: June 20, 2024

## MEMORANDUM OPINION

*Upon Consideration of the Appeal of the rulings of
the New Castle County Board of Assessment Review,*
**AFFIRMED.**

Theodore A. Kittila, Esquire, and William E. Green, Esquire, HALLORAN, FARKAS, KITTILA, LLP., Wilmington, Delaware. *Attorneys for Appellant.*

Adam Singer, Esquire, Judith Ann Hildick Mitchell, Esquire, and William C. Martin, Esquire, NEW CASTLE COUNTY LAW DEPARTMENT, Wilmington, Delaware. *Attorneys for Appellees.*

**BUTLER, R.J.**

## FACTS

SU-BE ("SU-BE" or "Appellant") is a limited liability company that owns 16.36 acres of land. SU-BE's principal is Steven Augusiewicz. The driveway into the property has an address of 1010 Bohemia Mill Road in Middletown. The driveway extends southward until it opens into a large field. The driveway continues along the outer perimeter of the property until it arrives at the southwest corner, where it meets a fenced enclosure containing a construction/equipment site. The construction site is what this lawsuit is about.

Since approximately 2002, the entire 16.36 acres enjoyed a "farm exemption." Land that qualifies for the farm exemption entitles it to some tax status that is not important to us here, but suffice it to say SU-BE enjoyed the status and did not want to lose it.

In 2022, a county land assessor visited the property and saw that the southwest corner of the property was fenced off from the rest. That area had a crushed rock base, an excavator, large piles of gravel and stone and various construction related equipment. The assessor also noted a pole barn within this enclosure to which Steve Augusiewicz would not permit the assessor to have access. In addition to SU-BE, Mr. Augusiewicz is listed with the Secretary of State as the registered agent for Split Rock Materials, Inc., located at 1010 Bohemia Mill Road – the same address as the farm-exempted land.

2

The assessor asked to see SU-BE's Farmland Assessment Application, a request with which SU-BE complied. SU-BE's application listed 10.5 of the 16.36 acres as cropland and 5.86 acres as "other."

The assessor determined that the 5.86 acres receiving the "other" designation by SU-BE should be removed from the farm exemption designation previously enjoyed by the entire 16+ acres. SU-BE appealed the assessor's decision to the Board of Assessment Review ("BOAR" or "Board"). The BOAR is an administrative creature of county government whose jurisdiction to hear SU-BE's complaint is not questioned.

Evidence at the BOAR included testimony that the farming that is conducted at the exempt property is tenant farming, meaning a contractor farms the land with the contractor's own equipment and stores nothing on the land.[1] The evidence further indicated that the 5+ acres covered with gravel is being used to store various pieces of construction equipment and stonework. Screen shots of Split Rock Materials' website showed it operating heavy machinery, including the excavator the assessor had seen onsite. Finally, although a building permit had been issued in 2005

---

[1] R00410. The Board has supplied the full record of proceedings before the Board. It may be found in the Court's record at Docket no. 13. The transcript of the hearing is located in Volume 6 of the record and is stamped as "R00XXX."

3

to build "farm structures" on the property, there was no evidence that any building currently in use in the enclosed area was being used as a farm structure.

The BOAR agreed with the County that the 5 acre site should lose its farmland exemption. The one "win" for SU-BE was the BOAR's decision that at least part of the driveway had a double use, serving both the farmed land and the construction equipment facility. While the County felt the entire driveway was not farmland, and therefore not exempt, the Board decided that the portion of the driveway serving a farming purpose should remain exempt; only when the driveway continued into the equipment facility, should it lose its farm exempt status.

The only other fact necessary for a decision on this appeal is a matter of BOAR procedure. The Board requires the appealing party to identify its witnesses in its notice of appeal. SU-BE identified its attorney, Richard Abbott, but did not identify any other fact witness. When SU-BE attempted to call Mr. Augusiewicz to testify before the BOAR, he was barred from giving testimony pursuant to the Board's rules of procedure.

SU-BE has appealed the Board's ruling.

4

## ISSUES

Appellant raises three issues in this appeal.[2] First, Appellant seeks a ruling that the entire driveway – including the portion in the construction equipment area – should be ruled farmland exempt. Second, it argues that the property beneath the buildings in the construction equipment area should be counted as farmland. Finally, Appellant makes a procedural complaint that its principal was excluded from testifying at the BOAR hearing.

## ANALYSIS

### I.     The Board Properly Assessed the Appellant's Driveway.

Appellant argued before the Board that the entire property was entitled to the farmland exemption. Appellant did not feel the County could parse specific acreage into different uses, even though Appellant clearly had done just that. Counsel argued before the Board that once the land received the farmland exemption, it would only lose it if it sought different zoning or use, certified to the County.

The Board rejected this argument. Support for the Board's position is found at 9 *Del. C.* § 8335 (assessment procedure), which explains that the farmland exemption is only available to land "actively devoted" to farming, for example, the

---

[2] *See generally* Appellant's Opening Br., Trans. ID 70724666 (Aug. 25, 2023).

house in which the farmer lives is not exempted, while a silo containing harvested crops, is.[3]  In this appeal, SU-BE no longer makes this argument.[4]

Instead, Appellant here argues that the Board's decision contains a "fatal error" because the Board did not describe, by metes and bounds, the border between the farmland driveway and the construction equipment site driveway.

The record shows that in deliberating on the driveway issue, a Board member expressed that "if you don't have that driveway, you get to that 10.9 acres, then that would be somewhat landlocked because there's only one way to get to the farmland, the same driveway that gets to the commercial use."[5]  This sentiment turned into a motion, which turned into a vote.  As expressed in its final order, the BOAR directed the County "to restore the farmland [exemption] for the portion of the [p]roperty on which the driveway is located."[6]  In context, that means the farm exemption would extend to that portion of the total driveway that served the farmland.  Perhaps it could

---

[3] *See* 9 *Del. C.* § 8335(b).  9 *Del. C.* § 8335(d) provides that land that was once used for farming but whose use has changed is subject to "roll-back taxes."  Subsection (d)(4) clarifies that "whenever land in agricultural use is applied to a use other than agriculture, and such land is but a portion of a larger tract of land, the remainder of which continues in agricultural use, roll-back taxes as provided herein shall become payable only with respect to the portion of the land which is applied to a use other than agricultural."  9 *Del. C.* § 8335(d)(4).

[4] *See* Appellant's Opening Br. at 9-10.

[5] R00527.

[6] R00268.

have been worded differently, but there is no question that is what the Board intended.

The County has pled, and shown by maps, that it has complied with the BOAR's order, redrawing the map to grant the farmland exemption to the driveway from Bohemia Road back to the open field that is farmed and to exclude the driveway beyond that, since its only purpose is access to the construction yard in the southwest corner.[7] This is not a "fatal error." It is simply the implementation of the directive of the Board that is supported by substantial evidence, as were the Board's findings.

## II. Property beneath the buildings on the construction site were properly excluded from the farmland exemption.

Appellant's second attack on the BOAR ruling involves the structures located within the construction zone. From the hearing record, it appears that the buildings in question were constructed by Appellant in or around 2005 and Appellant obtained building permits from the County in doing so. Appellant characterized them as "farm buildings" on the permit application. Therefore, Appellant argues, they must be farm buildings, subject to the farm exemption, regardless of their present use. Obviously, this makes zero sense.

---

[7] 9 *Del. C.* § 8312 allows the Court to permit the parties to supplement the record as necessary on appeal. While the County did not seek leave to do so, the Court finds that implementation of the Board's order, on review here, is appropriate to understand what the County did in response.

It is correct that if they are indeed farm buildings, the land beneath them is entitled to the farm exemption, just as they would if they were land being actively farmed.[8] But a farm building is not defined by what the builder put on a county building permit: it is defined by what the land they support is being "actively" used for. If the building, and the land under it, is being actively used to support a construction equipment storage facility, then it is not being used for farming.

In this case, the buildings in question were located within the enclave of the construction equipment site in the southwest corner of the property. So if a farmer were going to use them, s/he would have to enter the fenced yard to get to them. Testimony at the hearing indicated that a tenant farmer generally does not use the landlord's farming equipment, s/he brings their own.[9] When the assessor toured the property, Mr. Augusiewicz would not allow the assessor into the buildings to inspect them.[10] It was certainly within the province of the Board to conclude that the owner's reluctance to allow an inspection of the buildings was to hide the fact that

---

[8] 9 *Del. C.* § 8335(b) provides that "in determining the total area of land actively devoted to agricultural, horticultural or forest use there shall be included the area of all land under barns, sheds, silos, cribs, greenhouses and like structures."

[9] R00410.

[10] R00412.

they were not being used for a farming purpose. This is consistent with the other evidence presented at the hearing.[11]

### III. SUBE's principal was not listed as a witness as required by the rules of the BOAR. There is no constitutional violation in the BOAR having rules of procedure to allow for an orderly hearing.

When SU-BE filed its notice of appeal of the assessor's findings, it did so on a form provided by the County for such appeals. The appeal was filed by attorney Richard Abbott as "owner or agent" and listed his law firm address. The form asked the appellant to explain "how this parcel meets all statutory eligibility criteria for the Farmland Assessment Program" and to "if necessary, attach additional pages." Mr. Abbott did so, explaining his arguments in favor.[12]

The form further states the appellant should "[i]dentify any witness or attorney who will appear on your behalf at the hearing" and "if necessary, list additional witnesses on an attached sheet of paper." Mr. Abbott listed only himself as either attorney or witness, no one else.[13]

---

[11] For example, the assessor testified that the equipment that was in plain sight was completely inconsistent with farm equipment on a small, 10-acre farm. R00410-411. At one point a board member commented that "some guy in Bethlehem, Pennsylvania, is farming this property, yet you have, what, 12, 14 buildings on the property? Doesn't make sense." R00482. The Board is certainly permitted to use its common sense.

[12] R00062-063.

[13] *Id.*

The hearing got off to a rocky start with the attorneys arguing about how much time each would be given (the chair decided 45 minutes each).[14] Then they argued at length about the jurisdiction of the Board, the role of county (versus state) government and the practical effect of the assessments at issue.[15]

A half hour later, they got to "preliminary issues number two," which was the County's motion to preclude Appellant from presenting any witnesses because none had been identified in its appeal papers.[16] Specifically, Mr. Augusiewicz was present at the hearing on behalf of SU-BE and clearly, Appellant's counsel intended to call him as a witness.

The County attorney recited Board Rule Article 8, section 7(a) providing that "any potential witness who may testify on the appellant's behalf shall be identified on the appellant's appeal form….The Board shall not permit any witness to testify at the hearing unless previously identified, as required under these rules."[17] Appellant did not, in fact, list Mr. Augusiewicz as a witness on its appeal form and so argued that the requirement was a "hyper-technicality" that did not prejudice the County. On the County's motion to exclude the witness because, after all, rules are

---

[14] R00273.

[15] R00274-299.

[16] R00300. According to the Board Chair, Issue number 2 came a half hour into the 90 minutes allotted to the whole dispute. *See* R00308.

[17] R00313; *see* Board of Assessment Review of New Castle County Rules of Procedure, Article 8, section 7(a).

rules, a Board member commented that "I think that if we did allow that to happen today, it would be a bad precedent to do so, to go against our rules. So that's all I wanted to add before we vote."[18] Thereupon, the Board voted to exclude the witness.

Appellant argues here that the Board lacked the statutory power to exclude Mr. Augusiewicz from giving testimony. Appellant says that the Board is only empowered to make rules concerning its "operation" under 9 *Del. C.* § 1318(4) and not rules affecting what Appellant calls "substantive rights."[19] According to Appellant, the Board has no right to exclude "all relevant evidence" pursuant to 9 *Del. C.* § 8312(b).

Under state law, New Castle County Council is empowered to create a Board of Assessment Review.[20] The Board of Assessment Review, by state law, is empowered to "prepare such rules and regulations for its operation as it deems appropriate."[21] The New Castle County Board of Assessment Review Rules of Procedure, previously discussed, is obviously authorized by statute and implemented pursuant to statutory authority. One such rule of procedure requires the appellant of an assessment to list its witnesses upon filing the appeal.

---

[18] R00315.

[19] Appellant's Opening Br. at 15-16.

[20] 9 *Del. C.* § 1317.

[21] 9 *Del. C.* § 1318(4).

11

The parties do not say whether these procedural rules have changed over the years, but Superior Court has reviewed the Board's rules of procedure in similar complaints about the appeal process. *Western Gateway Associates v. New Castle County Board of Assessment Review*,[22] was a 1986 Superior Court decision reviewing an appeal form requiring submission of the "material substantiating your reasoning" with the appeal. The appellant failed to include its comparable property analysis with the paperwork and the Board refused to consider it. As against the argument that the Board had violated the statute requiring it to consider "all relevant evidence," the Court affirmed the Board's conclusion that notwithstanding the relevance, the Board's right to demand compliance with its rules is reasonable.[23]

To similar effect is *National Vulcanized Fibre Co. v. New Castle County Board of Assessment Review.*[24] There, the Court rejected the argument that there was no prejudice in supplying materials after notification of the appeal, notwithstanding the rule requiring that everything be submitted with the appeal. The Court said, "[i]t is

---

[22] 1986 WL 11538 (Del. Super. Sept. 26, 1986).

[23] *Id.* at *2. Appellant makes an argument that the rule should not apply here because this is a farmland exemption case, not an annual assessment case before the Board. But this is a distinction without a difference. There is but one means of appealing the county assessor's determination of assessments, through the BOAR. Its rules of procedure apply in any such case.

[24] 1989 WL 5228 (Del. Super. Jan. 10, 1989).

the Board's function, not this Court's, to determine what information is required to be submitted with the appeal form."[25]

The Court presumes the Board is well aware of its rules of procedure and the provision that "[t]he purpose of the Rules is to fairly and efficiently administer the appeals process" and the Board's privilege to suspend the rules at a meeting when a majority of the Board finds it appropriate. At this meeting, that question was raised and failed to gain a majority of votes. Doing so was within the Board's discretion.

The Court concludes that the findings of the Board are supported by a fair process yielding a fair result. That is the object of the statutory milieu in which the BOAR finds itself and the Court is duty bound to affirm its process and its rulings.

## CONCLUSION

Based on the foregoing, the findings and conclusions of the New Castle County Board of Assessment Review are **AFFIRMED.**

**IT IS SO ORDERED.**

**/s /Charles E. Butler**
Charles E. Butler, Resident Judge

---

[25] *Id.* at *2.